METROPOLITAN LUMBER COMPANY, complainant-appellant,

*v.*

FORDHAM NATIONAL BANK, JOHN G. FLANIGAN and WILLIAM J. COGAN, defendants-respondents.

[Argued November 1st, 1928.   Decided February 14th, 1929.]

*Mr. Milton M. Unger,* for the appellant.

*Mr. John G. Flanigan* and *Mr. William J. Cogan,* for the respondents.

The opinion of the court was delivered by

PARKER, J.

The decree directed that preliminary injunctive restraints be vacated; that complainant pay to defendants Flanigan and Cogan, who are counselors-at-law of this state, the sum of

$2,000 with interest and costs, and an additional counsel fee of $800, and that the bill be dismissed with costs to the Fordham National Bank. This, of course, was a final disposition of the cause, although, as will be seen, there was nothing in the nature of a final hearing.

The principal object of the bill is to set aside a mortgage of the lumber company to the bank, dated December 30th, 1927, and also an assignment of rents, to defendants Flanigan and Cogan. The vice-chancellor advised an order to show cause with temporary restraint on February 1st, 1928; continued it on February 7th with directions that certain affiants to affidavits submitted for complaint appear and submit to cross-examination pursuant to rule 204; and further continued the matter on February 24th. Upon the affidavits submitted, and the record before him, he held that the injunction should be dissolved, (a) because preliminary injunction should not go against a national bank, (b) because the bill, being verified merely on information and belief, was not sufficiently verified to hold an injunction, (c) because the material allegations of the bill were fully denied in the answering affidavits. He then proceeded to consider, on the affidavits and counter affidavits, a motion to dismiss the bill, and considering that on these affidavits the complainant had not shown the duress alleged in the bill, granted the motion to dismiss it. All these rulings are before us on this appeal.

We agree with the learned vice-chancellor that the equities of the bill were fully met by the answering affidavits, and that in consequence the preliminary injunction was properly vacated. *Citizens Coach Co.* v. *Camden Horse Railroad Co., 29 N. J. Eq. 299; Ye Olde Staten Island Dyers and Cleaners* v. *Barrett Nephews & Co., 98 N. J. Eq. 702.* This renders it unnecessary to consider the matter of awarding a preliminary injunction against a national bank, or the alleged insufficient verification of the bill in the first instance, though for present purposes we shall assume that the ruling below on the latter point was correct.

But we are unable to concur in the dismissal of this bill on the ground taken in the court below. This action amounted to

the summary award of a final decree for defendant, based, not upon a final hearing and findings of fact on the evidence taken thereat, but upon a final adjudication of facts on *ex parte* affidavits and cross-examination under the rule, which affidavits and cross-examination were directed, and could properly be directed, solely. to the question whether there should be an *ad interim* restraint. We are not aware of any statute, rule of practice, or decision of this court which supports such action. Section 4 of the Chancery act of 1915 ( *P. L. p. 185*), provides for the striking out of a sham defense, and an instance of such action appears in *Penrose* v. *Absecon Land Co., 94 N. J. Eq. 436, 814;* but in the absence of a variance from the regular procedure, by consent of parties, as in *Reforso Knitting Mills* v. *M. & N. Construction Co., 104 N. J. Eq. 219* (decided by consent on affidavits and stipulation), a bill in equity which properly states a case of equitable cognizance will not be dismissed on the facts until after a final hearing in regular course, or on facts appearing conclusively of record. In *Sleitz* v. *Old Dominion, &c., Co., 89 N. J. Eq. 265,* the bill was held to state a cause of action, and motion to dismiss was denied; in *Mansfield* v. *Kraus, 101 N. J. Eq. 287,* we reversed a dismissal, which seems to have been directed because of certain informal statements of fact *aliunde* the record, and resting our decision on the face of the bill; as was done likewise in *Rau* v. *Doremus, 101 N. J. Eq. 809.* In *McGarvey* v. *Young, 100 N. J. Eq. 174; affirmed, 101 N. J. Eq. 302,* the bill, answer and reply showed conclusively a case of *res judicata.* We conclude, therefore, that if the bill in the present case showed on its face a situation calling for equitable relief, it was error to dismiss it even though a preliminary injunction was properly vacated, even though the original verification may have been irregular, and even though the bill may not have been verified at all; for an injunction may go at final hearing on an unverified bill if it states facts justifying injunctive relief and is supported by the evidence at the hearing. *2 Dan. Ch. Pr. *1681* and cases cited; *32 C. J. 336.* It is every day practice for the court of chancery to postpone the question of issuing an injunction until final hearing.

The question then remains whether the dismissal of this bill *in toto* can be supported on the ground that on its face it fails to show a case for equitable interference.

· The bill shows that in November, 1927, the bank recovered judgment in the federal court against the lumber company for $16,181.98 and issued execution thereon which was levied on real and personal property of the company, and not stayed for want of a bond on appeal; also that the bank holds two notes of the company for $3,300 and $1,200 respectively which are in suit, and disputed, and the company has filed a counter-claim; that a third note purporting to be executed by the company and in the hands of the Broad and Market National Bank of Newark is a forgery and its transfer has been enjoined. (Said bank is not a party to this litigation.) The bill goes on to state that execution upon the aforesaid judgment was levied on rents accruing to the company from its real estate which was amply sufficient, as alleged, to answer such judgment; that Jacobson, the president of the company, though ill, tried to arrange with Flanigan and Cogan, the bank's attorneys, to lift the execution particularly as against the rents, and as a condition thereof they demanded that the company execute a mortgage to the bank on its properties in the sum of upwards of $26,000 to secure: (a) the judgment of $16,181.98; (b) the claim on the disputed notes of $3,300 and $1,200; (c) the claim on the disputed $5,200 note, in which the Fordham bank has no interest (the bill is silent as to whether Flanigan and Cogan are interested therein), and should also pay $3,000 as counsel fees to Flanigan and Cogan, attorneys for the bank; that Jacobson retained one David Bobker to negotiate on his behalf and that of the company, but Bobker did not know the facts and could not get them fully on account of Jacobson's illness, but Flanigan and Cogan refused to wait, so the mortgage was drawn and executed and placed on record, and likewise a check for $3,000 to the order of the bank was drawn and "issued" to pay the aforesaid counsel fees; that the mortgage by its terms is payable on demand, but that there was a contemporaneous written agreement (copy annexed to the bill) that it shall run for six

months "unless payment be jeopardized." An assignment of rents to Cogan and Flanigan to the extent of $2,000 was also executed. The bill prays a decree that the several instruments were obtained by duress, and setting them aside; that Flanigan and Cogan be enjoined from proceeding on the assignment of rents; and adjudging what amount is actually due from the company to the defendants or either of them; the company offering to "pay to the bank and to Flanigan and Cogan any sum of money which it may be determined ultimately to be due (sic) to them, in the meantime to secure payment thereof."

It will have been observed that the bill makes no charge of fraud or undue influence in the general sense of that term, in the procurement of the questioned instruments, but relies specifically upon duress; and this must mean duress of goods, for there is no suggestion of duress of the person. The transaction took the form of a compromise and settlement in which each side gained something, and each side surrendered something. What the lumber company gained was six months delay in the collection of the judgment, and an escape from the danger of being sold out under execution and losing three valuable business properties in the heart of the market district of Newark; also an escape from a levy on the rents of those properties with the exception of one month's rent of part of a Montclair property, $666.66; one month's rent of another part of the same $541.67, and one month's rent of a Newark property, $833, or in all, $2,041.33, enough to cover $2,000 (not $3,000) demanded by Flanigan and Cogan.

What the lumber company conceded was the said assignment of $2,041.33 of rents to the attorneys and mortgage security in the name of the Fordham bank to the amount of $26,000 odd, in the form of a straight mortgage to run six months, but, in the language of the bill, to 'secure the judgment and the claims on notes. As the bank has not satisfied the judgment or surrendered the $4,500 of notes, and for all that appears, the $5,200 outside claim is still outstanding and disputable, the fair inference is that the mortgage is a mere lien for such amounts (up to its face) as are finally adjudged due on the respective claims. If so, we have on the face of

this bill a mortgage lien and assignment of one month's rents on two properties in exchange for six months' immunity from execution and sale of land and from general levy on the rents. This is legitimate compromise, and not duress. *12 C. J. 347, 348; 10 Am. & Eng. Encycl. L. (2d ed.) 344, 346.* The fact that the assignment of rents runs to the bank's attorneys does not alter the matter. We know of no legal objection to a defendant agreeing to pay a reasonable fee to plaintiff's lawyer as one of the terms of a compromise. It the court of chancery may award such a fee in litigation; if five per cent. of a district court judgment is taxed as an attorney's fee; and if in many jurisdictions an attorney's fee may be stipulated on a confession of judgment (*34 C. J. 112; Smith v. Swart, 103 N. J. Law 150*) it would seem that an agreement to pay an attorney's fee as part of the consideration of forbearance in enforcement of a judgment is not legally objectionable, and if so, will not in this case amount to duress.

We conclude, therefore, that on the face of the bill no case of equitable cognizance was presented, and for this reason the decree of dismissal will be affirmed.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, BLACK, CAMPBELL, LLOYD, WHITE, VAN BUSKIRK, KAYS, HETFIELD, JJ. 10.

*For reversal*—KALISCH, KATZENBACH, JJ. 2.